# IN THE UNITED STATES DISTRICT COURT FOR THE
## NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

CHS ACQUISITION CORP., d/b/a CHICAGO
HEIGHTS STEEL,

      Plaintiff,

      v.

WATSON COATINGS, INC.,

      Defendant/Third-Party Plaintiff,

      v.

BASF CORPORATION and IMCD US, INC.,

      Third-Party Defendants.

)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)

Case No. 17-cv-4993

Judge Robert M. Dow, Jr.

## MEMORANDUM OPINION AND ORDER

Before the Court is (1) Defendant/Third-Party Plaintiff Watson Coatings, Inc.'s motion [29] to dismiss CHS Acquisition Corp.'s Complaint; (2) Third-Party Defendant BASF Corporation's motion [59] to dismiss Watson's Third-Party Complaint; (3) Third-Party Defendant IMCD US, LLC's motion [72] to dismiss Watson's Third-Party Complaint; and (4) Watson's request for leave to amend its Third-Party Complaint. For the reasons stated below, Watson's motion [29] is granted in part (as to Count II) and denied in part (as to Counts I, III, and IV). BASF's motion [59] is granted, and the claims in the Third-Party Complaint against BASF are dismissed with prejudice. IMCD's motion [72] is granted, and the claims in the Third-Party Complaint against IMCD are also dismissed with prejudice. Watson's request for leave to amend its Third-Party Complaint is denied. This case is set for further status on September 4, 2018 at 9:00 a.m.

## I. Background

### A. CHS's Complaint

Plaintiff CHS Acquisition Corp. ("CHS") filed its Complaint against Defendant/Third-Party Plaintiff Watson Coatings, Inc. ("Watson") in July 2017. [See 1.] For purposes of Watson's motion to dismiss, the Court accepts as true all of CHS's well-pleaded factual allegations and draws all reasonable inferences in CHS's favor. *Killingsworth v. HSBC Bank Nev., N.A.*, 507 F.3d 614, 618 (7th Cir. 2007).

CHS is an Illinois corporation that manufactures specialty steel products, including steel posts for signs and fences. [1, ¶ 5.] CHS paints most of the products it manufactures with topping paint that is corrosion and weather resistant. [*Id.*] Watson is a Missouri corporation that manufactures specialty paints, including corrosion and weather resistant topping paints. [*Id.*, ¶ 6.] Watson supplied CHS with such paints for several years prior to 2016. [*Id.*, ¶ 7.] In the normal course of dealing between the parties, CHS would pre-approve formulations for the topping paints that it needed and issue purchase orders to Watson for these pre-approved paints. Watson would then manufacture the topping paints according to those pre-approved specifications. Watson invoiced CHS for these paints after delivery, and CHS remitted payment. [*Id.*] Watson satisfactorily supplied paints to CHS in this way for several years prior to 2016. [*Id.*]

In the course of this arrangement between the parties, in and before 2016, Watson represented to CHS that its specially formulated paints had excellent adhesion and exterior exposure characteristics and good corrosion resistance. These qualities made them particularly appropriate for use on CHS's products, and CHS relied on these representations in purchasing paints from Watson via the purchase order process described above. [*Id.*, ¶ 8.]

However, in 2016 and continuing into early 2017, Watson supplied CHS with an incorrectly manufactured topping paint. In particular, the topping paint contained an unsuitable resin that did not conform to CHS's specifications, causing it to crack, peel, and separate from the steel posts to which CHS had applied it. [*Id.*, ¶¶ 9–10.] CHS discovered the problem in February 2017 when its customers reported cracking and peeling paint. [*Id.*, ¶ 10.] After CHS brought these failures to Watson's attention, Watson's president and manager acknowledged that the topping paint it supplied to CHS had been manufactured using the improper resin, making the paint unsuitable for its intended purpose. [*Id.*, ¶ 11.] CHS thereafter discontinued using Watson's topping paint in its own steel products manufacturing process. [*Id.*]

At the time that it discovered the issues with Watson's topping paint and discontinued the use of it, CHS already had paid Watson for the defective product. CHS demanded reimbursement from Watson, as well as compensation for losses and damages proximately caused by the defective paint, but Watson refused these demands. [*Id.*, ¶ 13.] CHS thereafter filed its Complaint against Watson, bringing claims for breach of express warranty (Count I); breach of implied warranty of fitness (Count II); breach of implied warranty of merchantability (Count III); and unjust enrichment (Count IV). Watson has moved to dismiss all of the claims against it. [See 29.]

### B. Watson's Third-Party Complaint

In addition to moving to dismiss CHS's complaint, Watson filed a Third-Party Complaint [37] against BASF Corporation ("BASF") and IMCD US, LLC ("IMCD").[1] In considering BASF's and IMCD's motions to dismiss, the Court accepts as true all of Watson's well-pleaded factual allegations and draws all reasonable inferences in Watson's favor. *Killingsworth*, 507 F.3d at 618.

---

[1] Watson continues to deny the material allegations alleged against it in CHS's Complaint, and brings its Third-Party Complaint in the alternative pursuant to 735 ILCS 5/2-604. [See 37, ¶ 10.]

In the Third-Party Complaint, Watson alleges that BASF is a Delaware corporation headquartered in New Jersey that develops, produces, and markets resins and other additives for incorporation into industrial paints and coatings. [37, ¶ 12.] IMCD is a Delaware corporation headquartered in Ohio that markets and distributes BASF's products to Watson. [*Id.*, ¶ 13.]

In 2016, IMCD promoted a BASF-produced resin to Watson for inclusion in Watson's topping paint products. In discussions between representatives of Watson and IMCD, IMCD represented that this particular resin would be appropriate for inclusion in the topping paint and would perform according to Watson's specifications and requirements for such paint. [*Id.*, ¶ 14.] Watson alleges that these representations by IMCD were made on behalf of both IMCD and BASF. [*Id.*] Based on these representations, Watson purchased the resin from IMCD and began to include it in the topping paint it manufactured for CHS. [*Id.*, ¶ 15.]

However, despite IMCD's representations, the resin did not actually perform according to Watson's specifications and requirements, as evidenced by the topping paint failures experienced by CHS's customers. [*Id.*, ¶¶ 16, 19.] After CHS brought this to Watson's attention in February 2017, Watson performed extensive testing on the topping paint and determined that the BASF-produced resin it had purchased from IMCD was the cause of the paint's failure. [*Id.*, ¶¶ 16–17.] Watson notified both IMCD and BASF of the issues allegedly caused by the resin's inclusion in the topping paint that Watson produced and sold to CHS. [*Id.*, ¶ 18.]

In the Third-Party Complaint, Watson brings claims against both BASF and IMCD based on these events for breach of express warranty (Count I); breach of implied warranty of fitness (Count II); and breach of implied warranty of merchantability (Count III). Both BASF and IMCD have moved to dismiss the Third-Party Complaint in its entirety. [See 59; 72.] Watson has also filed a request to amend its Third-Party Complaint in the event that the Court is inclined to dismiss

it. [See 95.] This request includes Watson's proposed amendments to its Third-Party Complaint—additional allegations regarding the relationship between BASF and IMCD and a proposed new claim against BASF and IMCD for violation of the Illinois Consumer Fraud and Deceptive Business Practices Act, 815 ILCS 505/2 ("ICFA"). [*Id.*] Both BASF and IMCD have opposed this request, arguing that this amendment would be futile.

## II. Legal Standard

To survive a Federal Rule of Civil Procedure ("Rule") 12(b)(6) motion to dismiss for failure to state a claim upon which relief can be granted, the complaint first must comply with Rule 8(a) by providing "a short and plain statement of the claim showing that the pleader is entitled to relief," Fed. R. Civ. P. 8(a)(2), such that the defendant is given "fair notice of what the * * * claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)) (alteration in original). Second, the factual allegations in the complaint must be sufficient to raise the possibility of relief above the "speculative level." *E.E.O.C. v. Concentra Health Servs., Inc.*, 496 F.3d 773, 776 (7th Cir. 2007) (quoting *Twombly*, 550 U.S. at 555). "A pleading that offers 'labels and conclusions' or a 'formulaic recitation of the elements of a cause of action will not do.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 555). Dismissal for failure to state a claim under Rule 12(b)(6) is proper "when the allegations in a complaint, however true, could not raise a claim of entitlement to relief." *Twombly,* 550 U.S. at 558. In reviewing a motion to dismiss pursuant to Rule 12(b)(6), the Court accepts as true all of the plaintiff's well-pleaded factual allegations and draws all reasonable inferences in the plaintiff's favor. *Killingsworth*, 507 F.3d at 618.

## III. Analysis

The Court begins by addressing Watson's motion [29] to dismiss CHS's Complaint. Because the Court concludes that CHS has stated valid claims against Watson, the Court then addresses BASF's and IMCD's motions [59; 72] to dismiss Watson's Third-Party Complaint, as well as Watson's request [95] for leave to amend its Third-Party Complaint.

## A. Watson's Motion to Dismiss CHS's Complaint

Watson has moved to dismiss all of CHS's claims pursuant to Rule 12(b)(6) for failure to state a claim. Specifically, Watson argues that CHS has failed to allege sufficient facts to support any of its claims.

### 1. Breach of Express Warranty (Count I)

In Count I of the Complaint, CHS brings a claim against Watson for breach of express warranty. [See 1, ¶¶ 14–19.] Watson argues that this count fails to state a claim because CHS has not sufficiently stated the terms of the warranty that it claims was breached. [See 30, at 3–4.]

In Illinois,[2] an express warranty is created where "(1) the seller makes an affirmation of fact or promise; (2) that relates to the goods; and (3) becomes part of the basis of the bargain between the parties." *Reid v. Unilever U.S., Inc.*, 964 F. Supp. 2d 893, 905–06 (N.D. Ill. 2013) (citing *Royal Bus. Mach., Inc. v. Lorraine Corp.*, 633 F.2d 34, 41 (7th Cir. 1980)); see also 810 ILCS 5/2-313(a); *Baldwin v. Star Scientific, Inc.*, 78 F. Supp. 3d 724, 739 (N.D. Ill. 2015). "Since express warranties are contractual in nature, the language of the warranty itself is what controls and dictates the obligations and rights of the various parties." *Rosenstern v. Allergan, Inc.*, 987 F. Supp. 2d 795, 805 (N.D. Ill. 2013) (applying Illinois law). Moreover, a party "must have privity

---

[2] Where, as here, "neither party raises a conflict of law issue in a diversity case, the applicable law is that of the state in which the federal court sits." *Indiana Ins. Co. v. Pana Cmty. Unit Sch. Dist. No. 8*, 314 F.3d 895, 900 (7th Cir. 2002); see also *Auto. Fin. Corp. v. Smart Auto Ctr., Inc.*, 334 F.3d 685, 688 (7th Cir. 2003) (court sitting in diversity applies "the law of the forum state"). This Court sits in Illinois and therefore will apply Illinois substantive law to decide Watson's motion. The parties also agree that Illinois substantive law applies to all of CHS's claims. [See 30, at 2; 88, at 4.]

to the contract before bringing a breach of express warranty claim." *Baldwin*, 78 F. Supp. 3d at 739 (quoting *In re McDonald's French Fries Litig.*, 503 F. Supp. 2d 953, 957 (N.D. Ill. 2007)) (applying Illinois law).

In the Complaint, CHS alleges that Watson, in the ordinary course of dealing between the parties, represented that its topping paints manufactured in accordance with CHS's specifications had "excellent adhesion and exterior exposure characteristics and good corrosion resistance." [1, ¶ 8.] CHS also alleges that the topping paint Watson supplied to it in 2016 and early 2017 did not have excellent adhesion and exterior exposure characteristics, or good corrosion resistance, as evidenced by the cracked and peeling paint that CHS's customers reported. [*Id.*, ¶ 10.]

These allegations sufficiently state a claim for a breach of express warranty because they allege that Watson made a specific affirmation of fact regarding a specific aspect of its product that the product did not actually possess. See *Weiss v. Rockwell Mfg. Co.*, 293 N.E.2d 375, 381 (Ill. App. Ct. 1973) ("[T]o be actionable under the theory of express warranty the claim must be based on an affirmation of fact or promise which is not a statement representing the seller's opinion or commendation of the goods and which is false."); see also *Reid*, 964 F. Supp. 2d at 907–08 (statement on product's packaging that hair treatment was a "smoothing" product could be viewed as an express warranty under Illinois law at the motion to dismiss stage); *L. Zingerman, D.D.S., P.C. v. Nissan N. Am., Inc.*, 2015 WL 1840952, at *4 (N.D. Ill. Apr. 20, 2015) (allegations that car company's advertisements and press releases touted specific capabilities of car's "InTouch" system stated a breach of express warranty claim under Illinois law); *Adkins v. Nestle Purina PetCare Co.*, 973 F. Supp. 2d 905, 922–23 (N.D. Ill. 2013) (statements that dog treats were "wholesome" and "nutritious" were actionable express warranties under Illinois law).

Watson argues that, to the extent CHS bases its claim on statements about the topping

paint's adhesion, exterior exposure characteristics, and corrosion resistance, these statements constitute mere puffery or opinion rather than express warranties. [30, at 4.] Statements are puffery if they are "empty superlatives on which no reasonable person would rely." *Reid*, 964 F. Supp. 2d at 908 (quoting *All-Tech Telecom, Inc. v. Amway Corp.*, 174 F.3d 862, 868 (7th Cir. 1999)). For example, statements of opinion that a product is "premium" or "perfect" would not create express warranties. *Corwin v. Conn. Valley Arms, Inc.*, 74 F. Supp. 3d 883, 892 (N.D. Ill. 2014); see also *Duncan Place Owners Assoc. v. Danze, Inc.*, 2016 WL 3551665, at *10 (N.D. Ill. June 30, 2016) (statements that goods are "good quality," "the best," "in perfect condition," or require "few repairs" generally do not result in express warranties) (citing *Redmac, Inc. v. Computerland of Peoria*, 489 N.E.2d 380, 382–83 (Ill. App. Ct. 1986)). However statements "that ascribe specific virtues to a product that it does not possess are not considered puffing." *Reid*, 964 F. Supp. 2d at 908. Whether or not a particular statement is an express warranty or mere puffery is generally considered a statement of fact that is not appropriate for resolution on a motion to dismiss. *Reid*, 964 F. Supp. 2d at 906; *Zingerman*, 2015 WL 1840952, at *4; *Redmac*, 489 N.E.2d at 382.

At the motion to dismiss stage, CHS's allegations that Watson warranted that its topping paint would have excellent adhesion and exterior exposure characteristics and good corrosion resistance are specific enough to state a claim for breach of express warranty. This is not a general statement that the topping paint would perform as expected or be high quality. See, *e.g.*, *Corwin*, 74 F. Supp. 3d at 892 (statements that bullets were "reasonably fit for their intended uses without endangering human safety," "perfect with powder or pellet," "premium," and "easy to load" were not specific affirmations or promises creating express warranties); *Ibarolla v. Nutrex Research, Inc.*, 2012 WL 5381236, at *7 (N.D. Ill. Oct. 31, 2012) (statement that defendant's product is "the

strongest fat destroyer we have ever released" was not factual such that it could create an express warranty). Instead, CHS alleges that Watson promised that the topping paint would have three specific characteristics that it did not actually have. The Court cannot conclude as a matter of law that attributing these three characteristics to the topping paint constituted puffery or sales talk rather than an express warranty. See *Duncan Place*, 2016 WL 3551665, at *10 (advertisements that defendant's faucets could be "depend[ed] on for many years to come," "engineer[ed] * * * to meet exacting standards," and "will give you years of * * * trouble-free service" could support a claim for breach of express warranty); *Gubala v. HBS Int'l Corp.*, 2016 WL 2344583, at *6 (N.D. Ill. May 4, 2016) (applying Illinois law) (allegation that product contained specific amount of protein was a statement of fact, not marketing language or puffery); *Bietsch v. Sergeant's Pet Care Prods., Inc.*, 2016 WL 1011512, at *3–4 (N.D. Ill. Mar. 15, 2016) (applying Illinois law) (statements on packaging for pet food that the product was nutritious and met identified standards were not necessarily puffery such that express warranty claim would have to be dismissed).

CHS also has alleged that it was in privity of contract with Watson in that it purchased the topping paint directly from Watson. CHS further alleges that Watson's statements about these characteristics of the paint became part of the basis of the bargain, as it relied on these affirmations in placing purchase orders with Watson for its topping pant with the specific characteristics that it needed for its products. [1, ¶¶ 7–8.] These allegations are sufficient to state a breach of express warranty claim.

Furthermore, CHS has sufficiently alleged the terms of the warranty to survive a Rule 12(b)(6) motion to dismiss by describing the statements Watson made regarding the topping paint's characteristics. See, *e.g.*, *Pressalite Corp. v. Matsushita Elec. Corp. of Am.*, 2003 WL 1811530, at *4 (N.D. Ill. Apr. 4, 2003) (while plaintiff did not specify whether defendant's

assurances were written or oral, the complaint sufficiently stated a claim for breach of express warranty by describing the alleged warranty's terms). Contrary to Watson's arguments, [see 94, at 2], at this stage CHS need not plead exactly who made the representations regarding the topping paint's characteristics or when exactly they were made, or provide written evidence of the exact statement that CHS alleges it relied on. This argument evokes Rule 9(b)'s particularity requirement, which does not apply to CHS's claims. See Fed. R. Civ. P. 9(b); *Baldwin*, 78 F. Supp. 3d at 740. Instead, CHS need only comply with Rule 8(a)'s requirement to provide a "short and plain statement of the claim" demonstrating that it is entitled to relief. CHS has done so by describing the content of the express warranties it alleges Watson made regarding specific characteristics of the topping paint it produced. This puts Watson on notice of the basis of CHS's express warranty claim. Compare *Smith v. BOC Grp. PLC*, 2001 WL 477237, at *6 (N.D. Ill. May 4, 2001) (allegation that defendants stated that their products were safe and did not cause an increased risk of cancer sufficiently stated the "terms" of the express warranty at the motion to dismiss stage), and *Rosenstern*, 987 F. Supp. 2d at 805 (denying motion to dismiss breach of express warranty claim where plaintiff described promotional activities of defendant stating that product was "well-tolerated" and "safe," and that plaintiff relied on this information, even though plaintiff did not specifically identify what promotional materials were relied on), with *Griffin v. Medtronic, Inc.*, 2017 WL 4417821, at *4–5 (N.D. Ill. Oct. 5, 2017) (granting motion to dismiss where plaintiff only alleged that product was expressly warranted to be safe and fit for use by consumers, that it was of merchantable quality, that its side effects were minimal), and *Baldwin*, 78 F. Supp. 3d at 740 (plaintiff failed to state a breach of express warranty claim where he had not set out the terms of a specific affirmation of fact that related to the product, and instead pled generally that unspecified defendants "promoted" or "touted" a drug that could cure a host of

diseases).  In sum, CHS has sufficiently stated a claim for breach of express warranty, and Watson's motion to dismiss Count I of CHS's Complaint is denied.

### 2.    Breach of Implied Warranty of Fitness (Count II)

In Count II, CHS brings a claim against Watson for breach of the implied warranty of fitness for a particular purpose.  Watson argues that CHS has failed to sufficiently allege facts to state a claim for a breach of this type of implied warranty.  [See 30, at 4–5.]

In Illinois, to state a claim for breach of implied warranty of fitness for a particular purpose, a plaintiff must allege that "(1) the seller had reason to know of the particular purpose for which the buyer required the goods; (2) the buyer relied on the seller's skill and judgment to select suitable goods; and (3) the seller knew of the buyer's reliance on its skill and judgment." *Indus. Hard Chrome Ltd. v. Hetran, Inc.*, 64 F. Supp. 2d 741, 746 (N.D. Ill. 1999) (citing 810 ILCS 5/2-315).  "No warranty for a particular purpose is created if the intended use is no different from the ordinary use of the product."  *Rosenstern*, 987 F. Supp. at 804 (quoting *Wilson v. Massey-Ferguson, Inc.*, 315 N.E.2d 580, 582 (Ill. App. Ct. 1974)); see also *Gerk v. CL Med. Sarl*, 2015 WL 7002802, at *2 (C.D. Ill. Nov. 10, 2015) ("A 'particular purpose' differs from the ordinary purpose for which the goods are used in that it envisages a specific use by the buyer which is peculiar to the nature of his business whereas the ordinary purposes for which goods are used are those envisaged in the concept of merchantability and go to uses which are customarily made of the goods in question.") (quoting 810 ILCS 5/2-315).

The Court concludes that CHS has failed to state a claim for breach of implied warranty of fitness for a particular purpose because it has not identified any non-ordinary use of the topping paint on which such a warranty could be based.  CHS alleges that it uses topping paint on most of its specialty steel products in order to make them corrosion and weather resistant.  [1, ¶ 5.]  CHS

also alleges that it purchased topping paint from Watson that was supposed to be suitable for application to its specialty steel products. [*Id.*, ¶¶ 6–7, 22.] But CHS has not alleged any facts from which the Court could infer that this use of the topping paint it had purchased—application to specialty steel products to make them corrosion and weather resistant—is different from the ordinary use of the topping paint. See *Walker v. Macy's Merch. Grp., Inc.*, 288 F. Supp. 3d 840, 868 (N.D. Ill. 2017) (granting summary judgment on implied warranty of fitness claim where plaintiff conceded she used product only for its ordinary purpose); *Gerk*, 2015 WL 7002802, at *2 (breach of implied warranty of fitness claim dismissed where plaintiff failed to plausibly claim that device was sold for a particular purpose separate from the device's ordinary purpose); *McDonald's*, 503 F. Supp. 2d at 957 (plaintiffs failed to state a claim for breach of implied warranty of fitness where they did not identify what the non-ordinary use of the complained-of product would be). CHS alleges that its customers had "particular needs" for their steel products, [1, ¶ 5], but there are no allegations about what those particular needs are or how they are different from the need to simply have steel products that are corrosion and weather resistant.

Even if CHS had plausibly alleged that its particular use of Watson's topping paint was distinct from topping paint's ordinary use, CHS has not sufficiently alleged that it relied on Watson's "skill and judgment" in selecting a suitable topping paint for its products, or that Watson was aware of such reliance. *Indus. Hard Chrome*, 64 F. Supp. 2d at 746. To the contrary, CHS alleges that in the course of its relationship with Watson, CHS would pre-approve the formulations that Watson used to manufacture topping paint in accordance with CHS's specifications. [1, ¶ 7.] While CHS may have relied on Watson's skill and judgment during this process, this allegation of CHS's direct involvement in approving topping point formulations negates the inference that it did so or that Watson would have any reason to know of any such reliance. And, while CHS may

have relied on Watson's statements that the topping paint conformed to its specifications, [see 1, ¶ 8], that does not support the notion that CHS relied on Watson's skill in selecting it. See *Mandel Metals, Inc. v. Walker Grp. Holdings*, 2015 WL 3962005, at *7 (N.D. Ill. June 26, 2015) (plaintiff failed to state implied warranty of fitness claim where allegations suggested that plaintiff had already selected the particular product that it needed and merely relied on defendant to provide that product). The only other relevant allegations in the Complaint are that (1) "Watson had reason to know, among other things, that CHS needed topping paint that would be suitable for application to its specialty steel products, including sign and fence posts" and (2) "Watson had reason to know that CHS was relying on Watson's skill and judgment to formulate and furnish topping paint that would be suitable for application to its specialty steel products, including sign and fence posts." [1, ¶¶ 22–23.] These allegations merely restate the elements of an implied warranty of fitness claim and thus fail to "raise [CHS's] right to relief above the speculative level." *Twombly*, 550 U.S. at 555. Thus, Watson's motion to dismiss Count II of CHS's Complaint is granted.

### 3. Breach of Implied Warranty of Merchantability (Count III)

In Count III, CHS brings a claim against Watson for breach of the implied warranty of merchantability. Watson similarly argues that CHS has failed to sufficiently allege facts to state a claim for a breach of this type of implied warranty. [See 30, at 5–6.]

In Illinois, "[t]o state a claim for breach of the implied warranty of merchantability, a plaintiff must allege that '(1) the defendant sold goods that were not merchantable at the time of sale; (2) the plaintiff suffered damages as a result of the defective goods; and (3) the plaintiff gave the defendant notice of the defect.'" *Baldwin*, 78 F. Supp. 3d at 741 (citing *Indus. Hard Chrome*, 64 F. Supp. 2d at 748). For goods to be merchantable, the good "must be at least * * * fit for the ordinary purposes for which such goods are used." *Parrot v. Family Dollar, Inc.*, 2018 WL

2118195, at *3 (N.D. Ill. May 8, 2018) (citing 810 ILCS 5/2-314(2)(c)).

CHS has sufficiently stated a claim for breach of implied warranty of merchantability in Count III. Watson argues that this claim fails because CHS has not alleged that the topping paint was not merchantable at the time of sale. [30, at 5.] This overlooks the allegations that the topping paint was incorrectly manufactured in 2016 and early 2017 in that it was made using an unsuitable resin that led the paint to crack, peel, and separate from the steel posts it had been applied to. [1, ¶¶ 9–10.] CHS also alleges that this topping paint was manufactured and sold to CHS at around this time. [*Id.*, ¶ 10.] It is reasonable to infer that, if the topping paint was incorrectly manufactured when this resin was added to it, the topping paint was not merchantable at the time the paint was sold to CHS (*i.e.*, it was not fit for its ordinary use—to make steel products corrosion and weather resistant).[3] See, *e.g.*, *Pressalite*, 2003 WL 1811530, at *4 (denying motion to dismiss breach of implied warranty of merchantability claim where the product's ordinary purpose could be easily inferred from plaintiff's factual allegations).

Thus, Watson's motion to dismiss Count III of CHS's Complaint is denied.

### 4. Unjust Enrichment (Count IV)

In Count IV of the Complaint, CHS brings a claim for unjust enrichment. Watson argues that a claim for unjust enrichment cannot stand alone as a separate claim if Counts I through III are dismissed. [See 30, at 6.] As Counts I and III are not dismissed, the Court need not address this argument. See *McDonald's*, 503 F. Supp. 2d at 958; *Muir v. NBTY, Inc.*, 2016 WL 5234596,

---

[3] Watson also argues that CHS has failed to state a clam for this implied warranty because the material terms of the contract are not presented in CHS's complaint. [See 30, at 5.] This argument fails. CHS has sufficiently alleged a sale of goods from Watson to CHS, and "in every sale of goods conducted by a seller, who is a merchant with respect to the goods of that kind, a warranty that the goods are merchantable is implied, unless excluded or modified." *Lukwinski v. Stone Container Corp.*, 726 N.E.2d 665, 668–69 (Ill. App. Ct. 2000) (citing 810 ILCS 5/2-314).

at *9 (N.D. Ill. Sept. 22, 2016); see also *McMahon v. Bumble Bee Foods LLC*, 148 F. Supp. 3d 708, 715 (N.D. Ill. 2015) ("[W]hether an unjust enrichment claim can stand alone is of no moment here because in the present complaint it does not stand alone.").

Watson further argues that CHS's Complaint does not clearly plead the unjust enrichment claim in the alternative to its other claims, and CHS cannot recover for unjust enrichment if a contract governs the relationship between the parties. [See 30, at 6.] Unjust enrichment is a quasi-contract theory that permits courts to imply the existence of a contract where none exists. *Prudential Ins. Co. of Am. v. Clark Consulting, Inc.*, 548 F. Supp. 2d 619, 622 (N.D. Ill. 2008). In Illinois, when the relationship between two parties is governed by contract, a plaintiff cannot bring an unjust enrichment claim unless the claim falls outside the contract. *Id.* (quoting *Utility Audit, Inc. v. Horace Mann Serv. Corp.*, 383 F.3d 683, 688–89 (7th Cir. 2004)); *Grayson v. Shanahan*, 2016 WL 6962827, at *2 (N.D. Ill. Nov. 29, 2016). However, in Illinois, a party may bring an unjust enrichment claim in the alternative to a breach of contract claim "if the party demonstrates that the claim is brought in the alternative and does not refer to an express contract governing the parties' relationship." *Grayson*, 2016 WL 6962827, at *2 (citing *Prudential Ins. Co.*, 548 F. Supp. 2d at 623) (applying Illinois law).

Counts I and III, the first two viable claims in CHS's Complaint, are clearly premised on the existence of a valid contract between CHS and Watson. [See 1, ¶¶ 15, 28.] However, Count IV of CHS's Complaint does not incorporate any contract-related allegations. [*Id.*, ¶¶ 33–37.] Although Count IV does not clearly state that it is brought in the alternative, the fact that the allegations in Count IV do not include, refer to, or incorporate by reference the express allegations of a contract between the parties is enough at this stage to allow the claim to survive. See *Prudential Ins. Co.*, 548 F. Supp. 2d at 623 (where unjust enrichment count was brought in the

alternative and did not refer to or incorporate references to a contract between the parties, the claim could withstand a motion to dismiss).  While CHS cannot recover on its unjust enrichment claim if it is eventually determined that a contract governs the parties' relationship, the claim can stand at this time.  This is particularly the case as Watson disputes what contract, if any, governs the parties' relationship based on the purchase order process that CHS's Complaint describes.  See *Carpenter v. Sirva Relocation, LLC*, 2013 WL 6454253, at *8 (N.D. Ill. Dec. 9, 2013); *Weyent v. Vertical Networks, Inc.*, 2004 WL 407017, at *2 (N.D. Ill. Feb. 4, 2004); *Francis v. Bankcard Am., Inc.*, 1999 WL 1289110, at *11 (N.D. Ill. Jan. 4, 1999) (where parties disputed the terms of the governing contract, plaintiff's unjust enrichment claim could survive summary judgment).  Therefore, Watson's motion to dismiss Count IV of CHS's Complaint is denied.

In sum, Watson's motion to dismiss CHS's Complaint is granted as to Count II and denied as to Counts I, III, and IV.

**B.     BASF's Motion to Dismiss Watson's Third-Party Complaint**

In its Third-Party Complaint, Watson brings claims against BASF for breach of express warranty (Count I); breach of implied warranty of fitness (Count II); and breach of implied warranty of merchantability (Count III).  BASF moves to dismiss all claims against it for failure to state a claim.  Specifically, BASF argues that (1) Watson has failed to sufficiently allege that it is in contractual privity with BASF; and (2) Watson fails to otherwise allege facts sufficient to state any breach of warranty claims.  BASF also opposes Watson's request [95] for leave to amend the Third-Party Complaint in the event of dismissal, arguing that Watson's proposed amendments would be futile.

**1.     Third-Party Complaint's Claims Against BASF**

In order to state a claim for both express and implied warranty claims under Illinois law,[4] a plaintiff must allege privity of contract with a defendant. See *Voelker v. Porsche Cars N. Am., Inc.*, 353 F.3d 516, 525 (7th Cir. 2003) ("Under the law of Illinois, privity of contract is a prerequisite to recover economic damages for breach of implied warranty.") (citing *Rothe v. Maloney Cadillac, Inc.*, 518 N.E.2d 1028, 1029–30 (Ill. 1988)); *Baldwin*, 78 F. Supp. 3d at 740 ("[U]nder Illinois law, Plaintiff must prove privity of contract before he can recover economic damages for breaches of express and implied warranty claims."); *Rosenstern*, 987 F. Supp. 2d at 805 (generally a party must have privity of contract to bring a breach of express warranty claim in Illinois); *IWOI, LLC v. Monaco Coach Corp.*, 581 F. Supp. 2d 994, 1000 (N.D. Ill. 2008) (applying Illinois law) ("Because [p]laintiff lacks privity of contract with [defendant], its implied warranty claim fails.").

In its opposition to BASF's motion to dismiss, Watson concedes that it has not alleged a direct contractual relationship between itself and BASF. [82, at 5.] Furthermore, Watson's Third-Party Complaint contains no allegations that would bring its warranty claims into any recognized exceptions to this privity requirement. See, *e.g.*, *Rosenstern*, 987 F. Supp. 2d at 805 (if a manufacturer "expressly warranted its goods to the ultimate consumers and this was the basis for the bargain and relied upon by plaintiffs," a party does not need to have privity of contract to bring an express warranty claim) (quoting *McDonald's*, 503 F. Supp. 2d at 957); *Reid*, 964 F. Supp. 2d at 911 (a plaintiff suing for personal injuries as opposed to economic losses need not establish privity of contract with a manufacturer to recover on a breach of implied warranty claim). Thus,

---

[4] Watson and BASF agree that Illinois substantive law applies to Watson's claims against BASF in the Third-Party Complaint. [See 60, at 3 n.2.] In the absence of a conflict, then, the Court will apply Illinois law. See *Indiana Ins. Co.*, 314 F.3d at 900.

as it acknowledges, Watson has failed to allege the existence of a critical element of all three of its claims against BASF in its Third-Party Complaint.

Despite this acknowledgment, Watson argues that its claims against BASF should not be dismissed for two related reasons. First, Watson argues that the Third-Party Complaint alleges IMCD's representations regarding the BASF-produced resin were made on behalf of both IMCD and BASF. [See 37, ¶¶ 14–15.] Second, Watson argues that, because it filed a motion for leave to conduct discovery [84] regarding the apparent agency relationship between BASF and IMCD concurrently with its opposition to BASF's motion to dismiss, BASF's motion should be denied until Watson has the opportunity to obtain key discovery to support its claims. [See 82, at 6.]

Watson's second argument is a non-starter, as the Court has already denied Watson's request to conduct this discovery. [See 93.] As the Court explained, Watson's request seeks to put the cart before the horse, as the Federal Rules of Civil Procedure require a party to allege plausible claims prior to proceeding with discovery. Watson's first argument similarly fails to save its claims against BASF in the Third-Party Complaint. Watson alleges that IMCD made representations "on behalf of" BASF, [37, ¶¶ 14–15], but there are no facts in the Third-Party Complaint supporting this allegation. To the extent that with this allegation Watson is attempting to allege an agency relationship between IMCD and BASF, the attempt fails. While the existence and scope of an agency relationship are questions of fact, "a plaintiff must allege a factual predicate to create the inference of agency." *Whitley v. Taylor Bean & Whitacker Mortg. Corp.*, 607 F. Supp. 2d 885, 895 (N.D. Ill. 2009) (citation omitted); see also *IWOI, LLC*, 581 F. Supp. 2d at 1000 ("[I]n Illinois, bare allegations of an agency relationship between the manufacturer and dealer are insufficient" to skirt a privity requirement). Watson's allegations of BASF's control over IMCD's representations are too "sketchy [and] implausible" to support a relationship between BASF and

IMCD that would create liability on BASF's part for IMCD's representations to Watson. See *Brooks v. Ross*, 578 F.3d 574, 581 (7th Cir. 2009) (implausible factual allegations do not provide notice to defendants of a plaintiff's claims).

Therefore, Watson's Third-Party Complaint is dismissed as to BASF.

### 2.     Proposed Additional Allegations and ICFA Claim Against BASF

As mentioned above, at the same time Watson opposed BASF's motion to dismiss, Watson also filed a motion [84] for leave to conduct discovery and/or for leave to amend its Third-Party Complaint. In this motion, Watson argued that it had not yet had an opportunity to conduct discovery regarding the agency relationship between BASF and IMCD, and requested leave to conduct such discovery. [See 84, at 3.] The Court denied Watson's request to conduct discovery. [See 93.] The Court also denied without prejudice Watson's request for leave to file an amended complaint while granting Watson an opportunity to file a supplemental brief explaining how its proposed amended complaint would defeat the arguments made by BASF in support of its motion to dismiss. BASF was also given an opportunity to file a response to that supplemental brief. [*Id.*]

Watson then filed a supplemental memorandum in support of its motion for leave to amend the complaint. [See 95.] In this memorandum, Watson includes (1) new allegations to support an apparent agency relationship between IMCD and BASF that it seeks to add to an amended complaint, [*id.*, at 2–4]; and (2) a proposed cause of action for a violation of the ICFA against both BASF and IMCD, [*id.*, at 4–6]. BASF filed a sur-reply arguing that all Watson's proposed amendments would be futile, and, therefore, BASF should be dismissed from this action with prejudice. [See 97, at 2.]

Rule 15(a) provides that if a party is not entitled to amend a pleading as a matter of course, it may amend "with the opposing party's written consent or the court's leave." The court "should

freely give leave when justice so requires." Fed. R. Civ. P. 15(a)(2). "Although the rule reflects a liberal attitude towards the amendment of pleadings, courts in their sound discretion may deny a proposed amendment if the moving party has unduly delayed in filing the motion, if the opposing party would suffer undue prejudice, or if the pleading is futile." *Campania Mgmt. Co. v. Rooks, Pitts & Poust*, 290 F.3d 843, 848–49 (7th Cir. 2002). An amendment is futile when it "merely restates the same facts using different language, or reasserts a claim previously determined"; when it "fails to state a valid theory of liability"; or when it "could not withstand a motion to dismiss." *Bower v. Jones*, 978 F.2d 1004, 1008 (7th Cir. 1992) (citations and internal quotation marks omitted).

### i. New Allegations Regarding Agency Relationship

In the set of additional factual allegations that it proposes adding to an amended Third-Party Complaint, Watson alleges that it had an ongoing relationship with IMCD from 2009–2016 primarily through IMCD's representative Rob Wagnon. [95, at 2.] According to Watson, Mr. Wagnon knew of the applications for and end use of Watson's topping paint because he was included in discussions with Watson about these issues. Mr. Wagnon was specifically informed about the process CHS, Watson's customer, used to make its specialty steel posts and the end use of Watson's topping paint in that process. [*Id.*] After meeting with Watson and gaining this knowledge, Mr. Wagnon would then meet with employees of BASF's technical department, convey this information about Watson's needs to them, and receive recommendations from BASF as to which BASF products IMCD should recommend to Watson. [*Id.*, at 2–3.] Watson alleges that this happened with the BASF-produced resin at issue in this case. Specifically, Mr. Wagnon met with Watson in June 2016 regarding the topping paint at issue; Mr. Wagnon then met with BASF employees to convey the specifications for this topping paint to BASF; and IMCD was then

instructed by BASF to recommend the ultimately unsuitable resin to Watson. Watson alleges, based on information and belief, that Mr. Wagnon would not make any recommendations to Watson regarding any BASF products without the prior approval and authority of BASF. [*Id.*, at 3.] Furthermore, the two Watson employees who primarily communicated with Mr. Wagnon regarding this resin (Thomas Watson and Mel Meyer) understood that Mr. Wagnon was acting as an agent of BASF based on representations made by both Mr. Wagnon and BASF. [*Id.*, at 3–4.]

Watson also includes specific representations that it alleges BASF made regarding the resin at issue here. Watson alleges that BASF created and disseminated a Technical Data Sheet for the resin, dated August 2010, which states that the resin has "[g]ood adhesion" and is appropriate for exterior and high humidity applications. [*Id.*, at 4; *Id.*, Ex. A, at 1.] Based on representations made by BASF through this Data Sheet (as well as on representations made by IMCD as an apparent agent of BASF), Watson purchased the BASF-produced resin from IMCD in August and September 2016. [*Id.*, at 4.] Furthermore, Watson alleges that, after Watson became aware of the topping paint failures, Watson, IMCD, and BASF had various meetings to investigate these failures. At one such meeting, Dr. Lori J. Boggs, Ph.D, a representative of BASF, admitted that BASF should not have recommended the resin for Watson's use. [*Id.*]

Any amendment to the Third-Party Complaint to include these allegations would ultimately be futile with regard to BASF. Even if the Court accepts them as true, such an amended third-party complaint would still fail to allege that BASF was in privity with Watson or had an agency relationship with IMCD such that any of IMCD's alleged statements and warranties could be attributed to BASF. Watson's proposed new allegations still contain no facts that could establish a direct contractual relationship between Watson and BASF. Instead, these allegations focus on

the relationship between BASF and IMCD, stating that IMCD had the apparent authority to bind BASF. [95, at 4.]

However, Watson still has not pled any facts that would support such an apparent authority relationship. "Apparent authority arises when a principal creates, by its words or conduct, the reasonable impression in a third party that the agent has the authority to perform a certain act on its behalf." *Opp v. Wheaton Van Lines, Inc.*, 231 F.3d 1060, 1065 (7th Cir. 2000) (quoting *Weil, Freiburg & Thomas, P.C. v. Sara Lee Corp.*, 577 N.E.2d 1344, 1350 (Ill. App. Ct. 1991)). "Only the words and conduct of the alleged principal, not the alleged agent, establish the authority of an agent." *C.A.M. Affiliates, Inc. v. First AM. Title Ins. Co.*, 715 N.E.2d 778, 783 (Ill. App. Ct. 1999). "In other words, for apparent authority to exist, the principal must communicate either directly or indirectly with the third party or take some action that instills in the third party a reasonable belief that the actor had authority to act as the principal's agent." *Toney v. Quality Res., Inc.*, 75 F. Supp. 3d 727, 744 (N.D. Ill. 2014) (citation omitted). Watson has not alleged any facts to support the notion that *BASF*, the alleged principal, as opposed to *IMCD*, the alleged agent, said or did anything to create this impression of apparent authority. See, *e.g.*, *Smith v. State Farm Mut. Auto. Ins. Co.*, 30 F. Supp. 3d 765, 778 (N.D. Ill. 2014) (dismissing claim premised on apparent authority theory in part because plaintiffs do not trace their belief about the supposed agency relationship to a manifestation of the alleged principal, rather than a representation made by the alleged agent).

Watson only alleges that IMCD would not recommend any BASF products to Watson without BASF's approval and that Watson employees understood that Mr. Wagnon was an agent of BASF based on unspecified representations of Mr. Wagnon and BASF. [95, at 3–4.] But Watson includes in its proposed amendment no allegations from which the Court could reasonably infer that BASF communicated directly or indirectly with Watson prior to the sale of the resin, let

alone that it did so in a way that conveyed such apparent authority. Instead, Watson makes one conclusory reference to representations by BASF and otherwise focuses on representations by IMCD regarding the alleged agency relationship between the two entities. The facts in Watson's proposed amendment are thus still the "bare allegations of an agency relationship" that are insufficient in Illinois to plead around the privity requirement for warranty claims. *IWOI*, 581 F. Supp. 2d at 1000–01 (citing *Kutzle v. Thor Indus., Inc.*, 2003 WL 21654260, at *6 (N.D. Ill. July 14, 2003)); see also *Jamison v. Summer Infant (USA) Inc.*, 778 F. Supp. 2d 900, 913 (N.D. Ill. 2011) (collecting cases and rejecting argument that an agency relationship between a manufacturer and immediate seller establishes privity with the consumer in Illinois); *Finch v. Ford Motor Co.*, 327 F. Supp. 2d 942, 946 (N.D. Ill. 2004) (granting summary judgment for defendants on breach of implied warranty claim where plaintiffs failed to establish any facts regarding an alleged agency relationship between plaintiff and defendant). These bare allegations do not state a plausible claim for relief.

Watson also proposes factual allegations regarding representations made by BASF in its Technical Data Sheet from August 2010 regarding the resin at issue. [See 95, at 4; *id.*, Ex. A.] However, because none of Watson's proposed new allegations are sufficient to allege privity of contract between Watson and BASF, any statements made by BASF in this Data Sheet cannot serve as the basis for warranty claims against it.[5]

---

[5] Even if Watson had sufficiently alleged privity of contract or an applicable exception to the privity requirement, the Court is not convinced that any representations regarding the resin contained within the Technical Data Sheet support to state a claim against BASF for breach of express or implied warranties. The last page of the data sheet contains a section entitled "Important" and states, in all capital and bold letters, "No warranties of any kind, either expressed or implied, including, but not limited to, warranties of merchantability or fitness for a particular purpose, are made regarding products described or designs, data or information set forth * * *." [See 95, Ex. A, at 5.] This conspicuous language indicates that BASF never intended to make any express warranties and disclaimed any implied warranties. See *Adolphson v. Gardner-Denver Co.*, 553 N.E.2d 793, 798 (Ill. App. Ct. 1990) ("[U]nder Illinois law, the parties must have intended that the representations made were to be construed as a warranty."); see also *R.O.W. Window Co.*

Therefore, to the extent Watson requests leave to amend the Third-Party Complaint to include these allegations against BASF, the request is denied because the amendment would be futile. See *Gandhi v. Sitara Cap. Mgmt.*, 721 F.3d 865, 869 (7th Cir. 2013).

### ii.     *ICFA Claim Against BASF*

Watson also includes in its proposed amendments to the Third-Party Complaint an ICFA claim against both BASF and IMCD. [95, at 4–6.] Specifically, Watson alleges that BASF fraudulently induced Watson to purchase the BASF-produced resin by falsely representing that the resin was appropriate for Watson's use. [*Id.*, at 5.] Watson further alleges that both BASF and IMCD engaged in unfair practices by falsely representing that the BASF-produced resin was appropriate for Watson's use. [*Id.*, at 6.] BASF argues that this proposed amendment is also futile, as Watson cannot bring an ICFA against it. [See 97, at 9–10.]

ICFA is "a regulatory and remedial statute intended to protect consumers * * * against fraud, unfair methods of competition, and other unfair and deceptive business practices." *Windy City Metal Fabricators & Supply, Inc. v. CIT Tech. Fin. Servs., Inc.*, 536 F.3d 663, 669 (7th Cir. 2008) (quoting *Robinson v. Toyota Motor Credit Corp.*, 775 N.E.2d 951, 960 (Ill. 2002)). Generally, the elements of a claim for violation of ICFA are: "(1) the defendant committed a deceptive act or practice; (2) the defendant intended for the plaintiff to rely on the deception; (3) the deception happened in the course of trade or commerce; and (4) the deception proximately caused the plaintiff's injury." *Cocroft v. HSBC Bank USA, N.A.*, 796 F.3d 680, 687 (7th Cir. 2015).

The protections of the ICFA are ordinarily limited to "consumers." See *Roppo v. Travelers Cos.*, 100 F. Supp. 3d 636, 650 (N.D. Ill. 2015) (citing *Bank One Milwaukee v. Sanchez*, 783 N.E.2d 217, 220 (Ill. App. Ct. 2003)). A consumer is defined in the ICFA as "any person who

---

*v. Allmetal, Inc.*, 856 N.E.2d 55, 59–60 (Ill. App. Ct. 2006) (a written disclaimer printed in all capital letters and set off by separate text was sufficiently conspicuous to disclaim implied warranties).

purchases or contracts for the purchase of merchandise not for resale in the ordinary course of his trade or business but for his use or that of a member of his household." 815 ILCS 505/1(e). However, a non-consumer may be able to bring an ICFA claim if it can satisfy the "consumer nexus test." *Roppo*, 100 F. Supp. 3d at 651 (citing *Brody v. Finch Univ. of Health Sciences/The Chicago Med. Sch.*, 698 N.E.2d 257, 268 (Ill. App. Ct. 1998)); see also *Athey Prods. Corp. v. Harris Bank Roselle*, 89 F.3d 430, 437 (7th Cir. 1996); *Tile Unlimited, Inc. v. Blanke Corp.*, 788 F. Supp. 2d 734, 739 (N.D. Ill. 2011) (a non-consumer may bring a claim under ICFA if defendants "have engaged in conduct that is either directed toward the market or otherwise implicates consumer protection concerns") (internal quotation marks and citation omitted). To satisfy the consumer nexus test at the pleading stage, a plaintiff must plead "(1) that its actions were akin to a consumer's actions to establish a link between it and consumers; (2) how defendant's representations concerned consumers other than plaintiff; (3) how defendant's particular action involved consumer protection concerns; and (4) how the requested relief would serve the interests of consumers." *Thrasher-Lyon v. Ill. Farmers. Ins. Co.*, 861 F. Supp. 2d 898, 912 (N.D. Ill. 2012) (internal alterations and citations omitted).

Watson cannot bring an ICFA claim against BASF because it does not meet the statutory definition of a "consumer," nor can meet the requirements of the consumer nexus test. Watson alleges that it purchased the resin for inclusion in the topping paint it ultimately sold to CHS. [See 37, ¶¶ 14–15.][6] Because Watson did not purchase the resin for its own use, it does not meet the statutory definition of a "consumer." See *Tile Unlimited*, 788 F. Supp. 2d at 739 (plaintiff was not

---

[6] Watson's request to amend its complaint specifically notes that, if granted the opportunity to amend its Third-Party Complaint, the amended complaint would include the allegations already contained within the Third-Party Complaint in addition to the proposed new allegations. [See 95, at 2.] The Court therefore also considers these old and new allegations together in determining whether the proposed amendment would be futile.

an ICFA "consumer" where plaintiff used complained-of product as "an inseparable component" of the final product plaintiff would install in homes and businesses); see also *Ivanhoe Fin., Inc. v. Mortgage Essentials, Inc.*, 2004 WL 856591, at *2 (N.D. Ill. Apr. 21, 2004) ("Merely purchasing component parts for incorporation into a final product does not make a party a consumer."); *Pressalite*, 2003 WL 1811530, at *10 (flashlight producer that purchased batteries for inclusion into flashlights was not a consumer); *Stepan Co. v. Winter Panel Corp.*, 948 F. Supp. 802, 807 (N.D. Ill. 1996) (plaintiff that purchased component from manufacturer incorporated into a product resold to customers was not a consumer). Moreover, neither Watson's Third-Party Complaint nor its proposed additional allegations plead that BASF's alleged conduct affected the market or that its requested relief could serve the interests of consumers. See *Roppo*, 100 F. Supp. 3d at 651 (dismissing ICFA claims where Plaintiff "provides no factual matter that would support an inference that Defendants' conduct—though deceitful—affects consumers in any way"); *Thrasher-Lyon*, 861 F. Supp. 2d at 912 (dismissing ICFA claims where plaintiff did not set out any factual allegations plausibly supporting consumer concerns to satisfy the consumer nexus test). The Third-Party Complaint does not talk about consumers or the market, or how any alleged misrepresentation about the resin incorporated into topping paint was directed at, or affected, consumers. The mere fact that CHS's customers eventually received steel products painted with a topping paint that included this resin is too tenuous to support a claim that BASF's alleged statements affected consumers. Therefore, Watson has no standing to bring this ICFA claim against BASF.

In any event, even if Watson could bring a claim against BASF under the ICFA, the Third-Party Complaint in combination with the proposed new allegations in Watson's supplemental memorandum would fail to state a claim against BASF. Watson's fraudulent inducement and

unfair practices ICFA claims both sound in fraud because they are both based on the same allegedly fraudulent course of conduct: BASF "falsely representing" that the resin was appropriate for inclusion in topping paint. Therefore, Watson's allegations must meet Rule 9(b)'s heightened pleading standard. See *Camasta v. Jos. A. Bank Clothiers, Inc.*, 761 F.3d 732, 737 (7th Cir. 2014). Rule 9(b) requires that, "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b). "To satisfy the heightened pleading standard of Rule 9(b), the circumstances [of the alleged misrepresentation] must be pleaded in detail. The who, what, when, where, and how: the first paragraph of any newspaper story." *Blankenship v. Pushpin Holdings, LLC*, 2015 WL 5895416, at *7 (N.D. Ill. Oct. 6, 2015) (internal quotation marks omitted; citing *DiLeo v. Ernst & Young*, 901 F.2d 624, 627 (7th Cir. 1990)). Rule 9(b) specifically requires alleging with particularity: "the identity of the person making the misrepresentation, the time, place, and content of the misrepresentation, and the method by which the misrepresentation was communicated to the plaintiff." *Id.* at *5 (quoting *U.S. ex rel. Grenadyor v. Ukranian Vill. Pharmacy, Inc.*, 772 F.3d 1102, 1106 (7th Cir. 2014)).

Watson bases these proposed ICFA claims on (1) the unspecified representations of Mr. Wagnon as an agent of BASF; and (2) the BASF Technical Data Sheet. [95, at 5–6.] As discussed above, the representations of Mr. Wagnon cannot be attributed to BASF. Even if they could, however, they are not specific enough to meet Rule 9(b)'s pleading requirements. There is no indication of what Mr. Wagnon said that was misleading, when he said it, or how it allegedly misled Watson. Watson only makes general allegations about Mr. Wagnon's representations regarding the topping paint's characteristics.

And the ICFA claim fares no better if based on the representations in the BASF Technical Data Sheet. Here, Watson identifies a specific misrepresentation that it alleges BASF made: the

"good adhesion" characteristic of the resin.  [96, Ex. A, at 1.]  However, Watson does not allege the "how" and "when" aspects of this allegedly fraudulent statement.  *DiLeo*, 901 F.2d at 627. More specifically, Watson does not allege how or when this data sheet was disseminated to it. Watson does allege generally that it relied on the representations in this document in deciding to purchase the BASF resin.  But this still does not explain how or when Watson saw the Data Sheet and relied on it.  Watson's ICFA claims against BASF thus are not pled with particularity.  See, *e.g.*, *In re Sears, Roebuck & Co. Tools Mktg. & Sales Practices Litig.*, 2009 WL 937256, at *6 (N.D. Ill. Apr. 6, 2009) (plaintiffs did not meet heightened pleading standard when they mentioned specific advertisements of defendant, but did not allege that they saw those specific advertisements); *McDonald's*, 503 F. Supp. 2d at 956 (plaintiffs failed to plead the "when" with particularity when they alleged that a particular advertisement was on defendant's website "before February 13, 2006," but did not provide more specifics).

In sum, BASF's motion [59] to dismiss Watson's Third-Party Complaint in its entirety is granted.  And because Watson has already laid out what its amended complaint would look like and such amendment would be futile, Watson's request for leave to file an amended complaint against BASF is denied and the claims against BASF are dismissed with prejudice.  See *Gandhi*, 721 F.3d at 869.

### C.    IMCD's Motion to Dismiss Watson's Third-Party Complaint

In its Third-Party Complaint, Watson also brings claims against IMCD for breach of express warranty (Count I); breach of implied warranty of fitness (Count II); and breach of implied warranty of merchantability (Count III).  IMCD moves to dismiss all claims against it for failure to state a claim.  [See 72.]  IMCD also opposes Watson's request to amend the Third-Party Complaint to include an ICFA claim against it, arguing that this amendment would be futile.

### 1.    Breach of Express Warranty (Count I)

In Count I, Watson brings a claim for breach of express warranty against IMCD.  [See 37, ¶¶ 22–27.]    Specifically, Watson alleges that IMCD represented that "the Resin would be appropriate for inclusion in Watson's topping paint and that the Resin would perform according to Watson's specifications and requirements and the applications and purposes of the topping paint," "expressly agreed to supply Watson with the BASF Resin suitable for use in its topping paint" and that IMCD "warranted that the BASF Resin was suitable for Watson's intended uses, including as being incorporated into topping paint."  [*Id.*, ¶¶ 14, 23–24.]

Considering the standard for breach of express warranty claims in Illinois[7] set out above, the Court concludes that Watson has not stated a claim against IMCD for breach of an express warranty.  Watson has not identified any specific affirmation of fact by IMCD regarding a specific aspect of the resin that became part of the basis of the bargain between them.  See, *e.g.*, *Reid*, 964 F. Supp. 2d at 907–08 (express warranty that product would "smooth" hair); *Adkins*, 973 F. Supp. 2d at 922–23 (express warranty that product was "wholesome" and "nutritious").  A comparison to the allegations against Watson itself in CHS's complaint demonstrates the deficiencies in Watson's Third-Party Complaint allegations.  CHS alleges that Watson made a specific promise about how the topping paint would perform—*i.e.*, that it would have excellent adhesion and exterior exposure characteristics.  Watson does not allege that IMCD warranted the resin would have any particular properties or specific characteristics:  the only representation regarding the

---

[7] IMCD does not concede that Illinois law applies.  [73, at 1.]  However, in its motion to dismiss, IMCD cites cases applying Illinois law "for the sake of simplicity" because it contends that the principal issue with the Third-Party Complaint is its compliance with federal pleading standards.  Because IMCD does not provide an alternative state law that it contends applies, and cites to Illinois cases, for purposes of resolving its motion to dismiss the Court will also apply Illinois law.  See *Auto-Owners Ins. Co. v. Websolv Computing, Inc.*, 580 F.3d 543, 547 (7th Cir. 2009) ("Courts do not worry about conflict of laws unless the parties disagree on which state's law applies.") (citation omitted).

resin that Watson alleges it received is that the resin would work as it was supposed to. This type of non-specific "good quality" representation is not an actionable express warranty.[8] See *Corwin*, 74 F. Supp. 3d at 892; *Duncan Place*, 2016 WL 3551665, at *10.

Therefore, Count I of the Third-Party Complaint is dismissed as to IMCD.

### 2. Breach of Implied Warranties of Fitness and Merchantability (Counts II and III)

Watson also brings claims against IMCD for breach of implied warranty of fitness (Count II) and breach of implied warranty of merchantability (Count III). [See 37, ¶¶ 28–40.] IMCD argues that both of these claims must be dismissed. Specifically, IMCD argues that Watson has failed to allege a particular purpose, or even an ordinary purpose, of the resin that would support these two implied warranty claims. [See 73, at 8–10.]

The Court agrees that Watson has not stated a claim for breach of the implied warranty of fitness for a particular purpose because it has not stated a particular purpose of the resin to support such a claim. See, *e.g.*, *McDonald's*, 503 F. Supp. 2d at 957 (dismissing implied warranty of fitness claim where "plaintiffs [] fail to identify what the non-ordinary use of [the relevant products] is"). The only use for the resin that Watson identifies in its Third-Party Complaint is inclusion in its topping paint. [See 37, ¶¶ 14–15, 30.] Nothing at all indicates that Watson would purchase the resin for some other reason, or that Watson purchased the resin for a specific topping paint different from other such products that it would produce and sell to its customers. Watson's own opposition to IMCD's motion also highlights this pleading deficiency. In arguing that it has sufficiently pled both a particular and ordinary use for the resin, Watson argues that "[t]he intended

---

[8] The representations contained within the BMSF Technical Data Sheet which Watson attaches to its proposed amendments do not save its express warranty claim against IMCD. Watson only alleges that these representations were made by BMSF and does not claim that IMCD had any involvement with them. [See 95, at 5–6.]

purpose of the BASF resin, to be included into paints, was known to IMCD" and that "the ordinary purpose is inclusion of the resin into paints."  [See 86, at 5.]  Without identifying a particular purpose for the resin, Watson's claim against IMCD for breach of implied warranty of fitness cannot survive.

The Court also concludes that Watson has not sufficiently stated a claim against IMCD for breach of the implied warranty of merchantability.  Specifically, Watson has not identified how the resin was not "fit for the ordinary purposes for which such goods are used." *Parrot*, 2018 WL 2118195, at *3.  The ordinary purpose of the resin is fairly simple to infer from the factual allegations in the Third-Party Complaint:  to include in topping paints to make them adhesive and corrosion and weather resistant.  [See 37, ¶¶ 14–16.]  But Watson has not alleged that at the time of sale the resin was not fit for this purpose.  See *Baldwin*, 78 F.3d at 741.  Watson only alleges that the topping paint's failure as experienced by CHS's customers was caused by the resin.  [*Id.*, ¶ 17.]  It is not reasonably inferable that the alleged causal link between the resin and the topping paint failure is due to the unfitness of the resin itself in the absence of any factual basis for that inference.  See, *e.g.*, *Indus. Hard Chrome*, 64 F. Supp. 2d at 748 ("[C]onclusory allegations" regarding product's merchantability could not state a claim "absent some factual support").[9] Watson has provided no such basis in its allegations.  Therefore, Watson's claim against IMCD in Count III for breach of the implied warranty of merchantability is dismissed.

### 3.      Proposed ICFA Claim

---

[9] The proposed amended Third-Party Complaint does not fix either of these implied warranty pleading deficiencies.  Nowhere in the proposed amendments does Watson specify the particular purpose of the resin.  And while the amendments allege that the BASF-produced resin caused the paint failure, they do not allege that this was due to the resin not being fit for its ordinary purpose.  [See 95, at 4.]

Watson's proposed amendments to the Third-Party Complaint include an unfair practices ICFA claim against IMCD. [95, at 4–6.] IMCD argues that amending the Third-Party Complaint to include this new claim would be futile.

This issue does not merit extended discussion. The proposed unfair practices ICFA claim against IMCD is identical to the claim against BASF. The same reasons barring Watson's claim against BASF—namely, Watson has no standing to bring a claim under the statute and has not met the pleading requirements of Rule 9(b)—apply equally to the claim against IMCD. See *Thrasher-Lyon*, 861 F. Supp. 2d at 912; *McDonald's*, 503 F. Supp. 2d at 956. Thus, Watson's request to amend its Third-Party Complaint to include an ICFA claim against IMCD is denied because this amendment would be futile.

In sum, Counts I through III in Watson's Third-Party Complaint as against IMCD are dismissed. And, again, the next iteration of Watson's proposed Third-Party Complaint [see 95] does not fix the pleading deficiencies in Counts I through III of the Third-Party Complaint, nor does it state an ICFA unfair practices claim against IMCD. Therefore, this dismissal is also with prejudice.

## IV. Conclusion

For the reasons stated above, Watson's motion [29] is granted in part (as to Count II) and denied in part (as to Counts I, III, and IV). BASF's motion [59] is granted, and the claims in the Third-Party Complaint against BASF are dismissed with prejudice. IMCD's motion [72] is granted, and the claims in the Third-Party Complaint against IMCD also are dismissed with prejudice. Watson's request for leave to amend its Third-Party Complaint is denied. This case is set for further status on September 4, 2018 at 9:00 a.m.

Date:  August 20, 2018

Robert M. Dow, Jr.
United States District Judge